IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 19–27–BU–DLC |
| Plaintiff, | |
| vs. | ORDER |
| DUANE ANDREW JONES, | |
| Defendant. | |

Before the Court is Defendant Jones' Opposed Motion to Dismiss Indictment for Exceeding Time Under 18 U.S.C. § 4241(d) and to Determine Fitness for Release.  (Doc. 42.)  For the following reasons, the motion is denied.

## BACKGROUND

On November 7, 2019, Jones was indicted on two counts of making a false statement in connection with a firearms transaction, in violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(1)(A) respectively.  (Doc. 1.)  On November 19, 2019, Jones was arrested in Colorado and then transferred to Montana.  (Doc. 6.)  Jones' initial trial was set for February 18, 2020.  (Doc. 13.)

On December 23, 2020, United States Magistrate Judge Kathleen L. DeSoto held a detention hearing and detained Jones after concluding that he posed a danger to the community and presented a flight risk.  (Doc. 19 at 2.)  Jones subsequently

moved for a continuance of his trial, which the Court granted and reset for March

16, 2020.  (Doc. 24.)

Shortly before trial, Jones filed an unopposed motion for a competency

determination.  (Docs. 30, 31.)  The Court ordered Jones into the custody of the

Attorney General for an evaluation, and Jones arrived at FDC SeaTac on March

26, 2020 for that purpose.  (Doc. 34.)  Jones' evaluation was slightly delayed on

account of the 14 days he spent in quarantine due the COVID-19 outbreak.  (*Id.*)

Jones' evaluation was complete as of June 24, 2019.  (Doc. 35.)

Upon reviewing the findings of Dr. Ryan Nybo, a forensic psychologist, the

parties stipulated that Jones was not presently competent to stand trial.  (Doc. 37.)

On July 6, 2020, pursuant to 18 U.S.C. § 4241(d), the Court found by a

preponderance of the evidence that Jones "suffers from a mental disorder or

disease . . . which would substantially impair his present ability to understand the

nature and consequences of the court proceedings brought against him, and

substantially impair his ability to assist counsel in his defenses."  (Doc. 38 at 1.)

The Court ordered that Jones be returned to the custody of the Attorney General to

be hospitalized for treatment "for such a reasonable period of time, not to exceed

four months, as is necessary to determine whether there is a substantial probability

that in the foreseeable future he [would] attain the capacity to permit his trial to

proceed."  (*Id*. at 3.)

From July 6 to October 28, Jones sat in custody in Montana awaiting available bed space at FMC Springfield.  (Doc. 44-2 at 1.)  When a bed became available, Jones was transferred to Springfield and was admitted for treatment on November 5, 2020.  (*Id.* at 2.)  Jones filed this motion the following day.  (Doc. 42.)

## DISCUSSION

Jones asks the Court to dismiss the indictment because, at the time of filing, four months had lapsed since the Court ordered Jones into the custody of the Attorney General for competency restoration proceedings.  (Doc. 43.)  Jones asserts that dismissal of the indictment is the appropriate remedy for any violation of Congress's strict time limitation contained in 18 U.S.C. § 4241(d).  (*See id.*)

The Government asserts that the four-month time period for hospitalization provided in § 4241(d) has not expired, and that even if it had, dismissal of an indictment is only appropriate as a remedy for gross prosecutorial misconduct.  (Doc. 44 at 6.)  The Government frames the issue here as one of the reasonableness of Jones' pretrial detention and urges the Court to adopt the analysis of the Second Circuit in determining that any delay was not constitutionally unreasonable.  (*Id.* at 7–14.)

Jones is incorrect that the four-month time period provided in § 4241(d) has expired.  Once a court determines that a defendant is incompetent to stand trial, the

court "shall commit the defendant to the custody of the Attorney General." 18

U.S.C. § 4241(d). The Attorney General, in turn, "shall hospitalize the defendant

for treatment in a suitable facility . . . for such a reasonable period of time, not to

exceed four months, as is necessary to determine whether there is a substantial

probability that in the foreseeable future he will attain the capacity to permit the

proceedings to go forward[.]" *Id.* § 4241(d)(1). By its plain terms, the "reasonable

period of time, not to exceed four months" does not begin to run until the

defendant is hospitalized. *United States v. Villegas*, 589 F. App'x 372, 373 (9th

Cir. 2015) (unpublished); *United States v. Zapata-Herrera*, No. 14-CR-3639-GPC,

2015 WL 4878319, at *1 (S.D. Cal. Aug. 14, 2015). By the time Jones filed this

motion, he had only been hospitalized for 1 day.

Nevertheless, construing Jones' argument in the broadest possible terms, the

Court will address whether dismissal of the indictment is warranted by the four-

month delay that occurred while Jones waited for his hospitalization to begin.

Jones is correct that "[i]ncapacitated criminal defendants have liberty interests in

freedom from incarceration and in restorative treatment." *Oregon Advocacy Ctr. v.

Mink*, 322 F.3d 1101, 1121 (9th Cir. 2003). "Holding incapacitated criminal

defendants in jail for weeks or months" for no other reason than to wait for a

treatment opportunity that is not yet available, "violates their due process rights

because the nature and duration of their incarceration bear no reasonable relation to

the evaluative and restorative purposes for which courts commit those individuals."
*Id.* at 1122; *see also Jackson v. Indiana*, 406 U.S. 715, 738 (1972) ("[A] person
charged by a State with a criminal offense who is committed solely on account of
his incapacity to proceed to trial cannot be held more than the reasonable period of
time necessary to determine whether there is a substantial probability that he will
attain that capacity in the foreseeable future."). "Lack of bed space or insufficient
staffing in psychiatric facilities does not constitute good cause for the government
to fail to [timely] provide an incapacitated defendant with restorative treatment[.]"
*Zapata-Herrera*, 2015 WL 4878319, at *2 (citing *Trueblood v. Washington State
Dep't of Soc. & Health Servs.*, 101 F. Supp. 3d 1010, 1014 (W.D. Wash.
2015), *overruled in part by* 822 F.3d 1037 (9th Cir. 2016)).

However, where a defendant is detained for some reason other than their
incapacitation, a brief delay caused by logistical difficulties or even error is not
unreasonable and does not result in any violation of the defendant's due process
rights. *United States v. Hatter*, No. 14-CR-1811-GPC, 2015 WL 1511015, at *2
(S.D. Cal. Mar. 19, 2015) (dismissing a defendant's due process challenge where
the defendant was detained upon finding that he posed a threat to the community,
notwithstanding a three-month delay in starting treatment (a month of which was
due to a clerical error)); *United States v. Smith*, 764 F. Supp. 2d 541, 545
(W.D.N.Y. 2011) (determining that a delay of 10-weeks while a defendant was in

custody awaiting transfer to a treatment hospital likely violated the defendant's due process rights unless it could be shown that the defendant posed a danger to the community); *see also Jackson*, 406 U.S. at 734 ("Without a finding of dangerousness, one committed . . . can be held only for a reasonable period of time necessary to determine whether there is a substantial chance of his attaining the capacity to stand trial in the foreseeable future").

Moreover, even upon finding a due process violation, the appropriate remedy is not to dismiss the indictment. *Zapata-Herrera*, 2015 WL 4878319, at *2; *United States v. Kabinto*, No. CR-08-1079-PCT-DGC, 2009 WL 2358946, at *1 (D. Ariz. July 31, 2009). In such a case, the appropriate remedy is an injunction. *E.g*., *Mink*, 322 F.3d at 1123.

As an initial matter, there is no due process violation in Jones' 122-day confinement while he awaited the start of his treatment at FMC Springfield. The heightened scrutiny for any period of incarceration based solely on incapacitation (as announced in *Mink* and *Jackson*) is not triggered here because Jones was not detained *because* of his mental disease or defect. Jones was detained in December after Judge DeSoto determined he presented a danger to his community and posed a flight risk. (Doc. 19.) Even if this were not true, Jones would not prevail in his efforts to dismiss the indictment. Dismissal of the indictment is only permitted "in cases of flagrant prosecutorial misconduct." *United States v. Chapman*, 524 F.3d

1073, 1085 (9th Cir. 2008).  Jones' nearly four-month delay awaiting transport was not due to any fault of the Government—and certainly not any flagrant misconduct.  The delay was due to the shortage of available beds at the Bureau of Prison's ("BOP") treatment facilities.  (Doc. 44-4 at 13–17.)

As of 2019, the BOP only had two treatment facilities, one at FMC Springfield and one at FMC Butner.  (*Id.* at 13.)  Average wait times for a bed at either facility runs somewhere between 3.5 to 4 months, as each facility accepts only a few new patients each month.  (*Id.* at 14.)  Patients are assigned a bed based on the order that they are entered onto the waitlist by the U.S. Marshals Service.  (*Id.*)  That Jones experienced a delay in starting his treatment is the unfortunate reality of a system where the need exceeds the present resources.  This is not grounds to dismiss the indictment.  Having so concluded, the Court need not address the Government's argument that this issue should be analyzed under the framework announced in *United States v. Magassouba*, 544 F.3d 387 (2d Cir. 2008).

IT IS ORDERED that the Motion (Doc. 42) is DENIED without prejudice.

DATED this 4th day of December, 2020.


Dana L. Christensen, District Judge
United States District Court